# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF ILLINOIS
### EASTERN DIVISION

GOMI MAK TRANSPORTATION INC.,  )
MILAN CHANGOVSKI, and )
GORDON GABERSKI, )
     )
    Plaintiffs, )
     )     No. 24 C 9780
    v. )
     )     Judge Sara L. Ellis
AMERICAN EXPEDITED INC., STRAIGHT )
LEASING AND RENTAL INC., NIKOLA )
ANDREEVSKI, MARTIN DIMITIEV, and )
FILIP JOVANOVSKI, )
     )
    Defendants. )

## OPINION AND ORDER

Plaintiffs Gomi Mak Transportation Inc. ("Gomi Mak"), Milan Changovski, and Gordon Gaberski leased trucks from Straight Leasing and Rental Inc. ("Straight Leasing") and transported freight for its affiliated company, American Expedited Inc. ("American Expedited"). After discovering that American Expedited paid them less than promised by manipulating the load prices, Plaintiffs filed suit against Straight Leasing, American Expedited, and their owners and officers, Nikola Andreevski, Martin Dimitiev, and Filip Jovanovski. Plaintiffs bring a claim for violation of the Racketeer Influenced and Corrupt Organization Act ("RICO"), 18 U.S.C. § 1961 *et seq.*, against Andreevski, Dimitiev, and Jovanovski.[1] They also bring a breach of contract claim against American Expedited and Straight Leasing. Defendants filed a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6). Because Plaintiffs have not

---

[1] The Court notes that Plaintiffs' complaint refers to "the RICO Defendants" without explicitly defining which Defendants fall within this term. Reading the complaint as a whole, however, the Court agrees with Defendants' interpretation that Plaintiffs direct the RICO claim only at Andreevski, Dimitiev, and Jovanovski. To the extent Plaintiffs intended to assert this claim against all Defendants, and not just the individual ones, they should make that clear in any amended pleading they file.

pleaded the alleged predicate acts of mail and wire fraud with the required particularity, Plaintiffs' RICO claim cannot proceed at this time. And because the Court dismisses the only federal claim before it and diversity jurisdiction does not exist, it defers consideration of the state law breach of contract claim until Plaintiffs plead a sufficient basis for subject matter jurisdiction.

## BACKGROUND[2]

Changovski and Gaberski, both Illinois residents, own Gomi Mak, an Illinois corporation. American Expedited, an Iowa corporation, is an active carrier that dispatches truck drivers to haul freight throughout the United States, including Illinois. American Expedited's affiliate, Straight Leasing, an Illinois corporation, leases equipment, such as trucks and trailers, to customers in lease-to-own contracts. Andreevski, Dimitiev, and Jovanovski, who all reside in Illinois, are owners and officers of both American Expedited and Straight Leasing. They recruit drivers, maintain the American Expedited driver fleet, manage internal operations, and sign contracts on behalf of American Expedited and Straight Leasing.

Gomi Mak entered into a business relationship with American Expedited and Straight Leasing in February 2023. American Expedited advised Plaintiffs to enter into lease-to-own contracts with Straight Leasing for the trucks and trailers they needed to operate as owner-operator truck drivers for American Expedited. Plaintiffs subsequently entered into agreements with Straight Leasing titled "Equipment Lease with Option to Purchase" (the "Leases"). For example, the Lease attached as Exhibit 1 to the complaint began on February 20, 2023 for Unit #578. It had a ninety-week term, and required a $7,500 down payment and a $750 weekly payment. At the end of the Lease term, Plaintiffs had the option to purchase the equipment for

---

[2] The Court takes the facts in the background section from Plaintiffs' complaint and exhibits attached thereto and presumes them to be true for the purpose of resolving Defendants' motion to dismiss. *See Phillips v. Prudential Ins. Co. of Am.*, 714 F.3d 1017, 1019–20 (7th Cir. 2013).

2

$1, as long as they were not in default. Changovski and Gaberski guaranteed Gomi Mak's obligations under the Lease.

Gomi Mak also entered into Contractor Operating Agreements (the "Agreements") with American Expedited. The Agreement attached as Exhibit 2 to the complaint, dated February 20, 2023, was for Unit #580. Schedule B of the Agreement provides that American Expedited would pay Plaintiffs 88% of the linehaul for each load they transported. In other words, American Expedited agreed to pay Plaintiffs 88% of the total price American Expedited's third-party broker customers paid American Expedited to transport the load. Andreevski, Dimitiev, and Jovanovski also represented to Plaintiffs that they would receive this amount for their work.

After entering the contracts, Plaintiffs began transporting loads for American Expedited. Once American Expedited received a load rate confirmation from a third-party broker, it sent dispatch instructions to its truck drivers instructing them where to pick up and deliver the freight. American Expedited communicated these instructions through mobile application transmissions, emails, texts, and phone calls, often across state lines. But when it came time for payment, American Expedited paid Plaintiffs significantly less than the 88% of the linehaul rate promised in the Agreements. American Expedited did so by providing Plaintiffs with dispatch instructions and pay statements that underreported the load price American Expedited received from the third-party broker customers so that it appeared as if Plaintiffs received the full 88% linehaul rate. Andreevski, Dimitiev, and Jovanovski directed American Expedited's employees to misrepresent the load prices to Plaintiffs through interstate wires and the mail.

In May 2024, Plaintiffs uncovered evidence of the underpayments when an American Expedited dispatcher anonymously sent Plaintiffs the actual rate confirmation documents. Plaintiffs compared these documents with the statements American Expedited provided to

Plaintiffs and found the discrepancies. For example, on March 1, 2023, Plaintiffs received dispatch instructions for a delivery from Mount Prospect, Illinois to North Syracuse, New York, with a claimed value of $2,200. But the actual load price on the rate confirmation sheet was $2,400. Plaintiffs only received 88% of $2,200. In another instance, Plaintiffs received dispatch instructions for a delivery from Mebane, North Carolina to Oakland, Florida, with a claimed value of $800. But the actual load price reflected in the rate confirmation was $1,100. On another occasion, Plaintiffs received dispatch instructions for a delivery from Miami, Florida to Hot Springs, Arkansas, with a value of $1,000. The actual load price was $1,600, however. Plaintiffs delivered a load from Atlanta, Georgia to Underwood, North Dakota, understanding the value of the load to be $3,000 when it was actually $3,400. On November 9, 2023, Plaintiffs delivered a load for which American Expedited claimed the value was $4,500 when it was actually $4,700. That same day, Plaintiffs delivered a load with a claimed value of $3,050 when it was actually $3,800. For all these instances, Plaintiffs received only 88% of the claimed value rather than the actual value of the load.

After Defendants learned that Plaintiffs had caught onto their scheme, Defendants engaged in harassment and intimidation to prevent Plaintiffs from filing suit or speaking out about their underpayment. Andreevski, Dimitiev, and Jovanovski sent threatening messages to Plaintiffs, and Defendants terminated Plaintiffs' contracts and leases in August 2024.

## LEGAL STANDARD

A motion to dismiss under Rule 12(b)(6) challenges the sufficiency of the complaint, not its merits. Fed. R. Civ. P. 12(b)(6); *Gibson v. City of Chicago*, 910 F.2d 1510, 1520 (7th Cir. 1990). In considering a Rule 12(b)(6) motion, the Court accepts as true all well-pleaded facts in the plaintiff's complaint and draws all reasonable inferences from those facts in the plaintiff's

4

favor. *Kubiak v. City of Chicago*, 810 F.3d 476, 480–81 (7th Cir. 2016). To survive a Rule 12(b)(6) motion, the complaint must assert a facially plausible claim and provide fair notice to the defendant of the claim's basis. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009); *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007); *Adams v. City of Indianapolis*, 742 F.3d 720, 728–29 (7th Cir. 2014). A claim is facially plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678.

Rule 9(b) requires a party alleging fraud to "state with particularity the circumstances constituting fraud." Fed. R. Civ. P. 9(b). "This ordinarily requires describing the 'who, what, when, where, and how' of the fraud, although the exact level of particularity that is required will necessarily differ based on the facts of the case." *AnchorBank, FSB v. Hofer*, 649 F.3d 610, 615 (7th Cir. 2011) (citation omitted). Rule 9(b) does not govern only claims of fraud; it applies to all allegations and averments of fraud. *Pirelli Armstrong Tire Corp. Retiree Med. Benefits Tr. v. Walgreen Co.*, 631 F.3d 436, 446–47 (7th Cir. 2011); *Borsellino v. Goldman Sachs Grp., Inc.*, 477 F.3d 502, 507 (7th Cir. 2007). "A claim that 'sounds in fraud'—in other words, one that is premised upon a course of fraudulent conduct—can implicate Rule 9(b)'s heightened pleading requirements." *Borsellino*, 477 F.3d at 507.

## ANALYSIS

### I.    RICO

RICO "provides a civil cause of action for private plaintiffs" who have been "injured 'by reason of' a defendant's RICO violation." *Anza v. Ideal Steel Supply Corp.*, 547 U.S. 451, 456 (2006) (citation omitted); *Menzies v. Seyfarth Shaw LLP*, 943 F.3d 328, 336 (7th Cir. 2019). Plaintiffs claim that Andreevski, Dimitiev, and Jovanovski violated § 1962(c). To state a claim

for a violation of this section, Plaintiffs must sufficiently plead conduct of an enterprise through a pattern of racketeering activity. *Menzies*, 943 F.3d at 336. "A pattern requires the commission of at least two predicate acts of racketeering activity occurring within ten years of each other." *DeGuelle v. Camilli*, 664 F.3d 192, 199 (7th Cir. 2011). Plaintiffs must also allege that their injuries arise "by reason of" the § 1962 violation, requiring both "but for" and proximate causation. 18 U.S.C. § 1964(c); *DeGuelle*, 664 F.3d at 199. Defendants make various arguments for why this claim fails, but the Court need only address one: that Plaintiffs have not pleaded the required predicate acts with particularity as required by Rule 9(b).

Predicate acts of "racketeering activity" include the commission of various enumerated crimes. 18 U.S.C. § 1961(a). Here, Plaintiffs contend that Andreevski, Dimitiev, and Jovanovski engaged in mail and wire fraud in violation of 18 U.S.C. §§ 1341 and 1343, as well as threatened the use of physical force against Plaintiffs, engaged in victim and witness tampering, and violated other state laws. Andreevski, Dimitiev, and Jovanovski argue that none of Plaintiffs' allegations suffice to put them on notice of the predicate acts each of them allegedly committed. Initially, Plaintiffs do not respond to the argument that they included only conclusory allegations of victim and witness tampering and other state law violations, and so the Court treats this as a concession that Plaintiffs do not pursue these claimed violations as predicate acts. *See Bonte v. U.S. Bank, N.A.*, 624 F.3d 461, 466 (7th Cir. 2010) ("Failure to respond to an argument . . . results in waiver.").

When "a plaintiff seeks to plead RICO's pattern element through predicate acts of mail or wire fraud . . . the heightened pleading requirements of Fed. R. Civ. P. 9(b) apply and require a plaintiff to do more than allege fraud generally." *Menzies*, 943 F.3d at 338. Rule 9(b) requires a party to "state with particularity the circumstances constituting fraud." Fed. R. Civ. P. 9(b).

"Given these heightened pleading standards and Congress's insistence that a RICO claim entail a clear pattern of racketeering activity, [the Seventh Circuit has] cautioned that '[it] do[es] not look favorably on many instances of mail and wire fraud to form a pattern.'" *Menzies*, 943 F.3d at 338 (citation omitted). Mail and wire fraud each require: (1) "the defendant's participation in a scheme to defraud;" (2) the defendant's use of either mail or interstate wires, respectively, "in furtherance of the scheme;" and (3) the "defendant's commission of the act with intent to defraud." *Bible v. United Student Aid Funds, Inc.*, 799 F.3d 633, 657 (7th Cir. 2015) (citation omitted).

Andreevski, Dimitiev, and Jovanovski contend that Plaintiffs have not specified what actions each of them took, instead alleging collectively that Andreevski, Dimitiev, and Jovanovski made false representations about load prices and sent or directed others to send the allegedly fraudulent pay statements. Because Plaintiffs seek to proceed against multiple defendants, they cannot engage in group pleading but instead must "plead sufficient facts to notify each defendant of his alleged participation in the scheme." *Goren v. New Vision Int'l, Inc.*, 156 F.3d 721, 726 (7th Cir. 1998). Plaintiffs, however, do not separate out the three individual defendants' actions and instead improperly lump them together as one. This does not suffice to place Andreevski, Dimitiev, and Jovanovski on notice of each of their alleged individual roles in the scheme. *See id.* at 730 ("[F]or the most part, the amended complaint simply treats all the defendants as one; such 'lumping together' of defendants is clearly insufficient to state a RICO claim under § 1962(c)."); *Webb v. Quintairos, Prieto, Wood & Boyer, P.A.*, No. 24 CV 04082, 2025 WL 843400, at *8–9 (N.D. Ill. Mar. 18, 2025) (plaintiff did not properly plead RICO claim where he alleged that groups of defendants performed the predicate acts); *James Streibich Revocable Tr. of 2002 v. Flagstad*, No. 20 CV 2242, 2020 WL

6134980, at *5 (N.D. Ill. Oct. 19, 2020) ("In the absence of particular facts to put each corporate defendant on notice for its alleged involvement in the predicate acts, plaintiffs' allegations are insufficient to satisfy Rule 9(b)'s requirements."). *Compare Freedom Mortg. Corp. v. Burnham Mortg., Inc.*, 720 F. Supp. 2d 978, 994–95 (N.D. Ill. 2010) (RICO claim failed to identify specific individual defendants' participation in mail, wire, and financial institution fraud beyond alleging loose allegations that "RICO defendants" had engaged in mail and wire fraud, and factual allegations did not identify movants' use of mail or wire at all), *with DT Boring, Inc. v. Chi. Pub. Bldg. Comm'n*, No. 15 C 11222, 2016 WL 3580756, at *9 (N.D. Ill. June 28, 2016) (plaintiff made "specific allegations with respect to each defendants' conduct and roll [sic] in the alleged scheme to defraud, identified each defendants' false statements and/or misrepresentations, and . . . specified the form, date, sender, and recipient of each of the offending mail and wire communications that make up the predicate acts").

Andreevski, Dimitiev, and Jovanovski also argue that Plaintiffs have failed to allege with the requisite particularity the dates of the alleged predicate acts, use of mail and wire communications, and who among Plaintiffs received the communications. Indeed, general allegations such as that Andreevski, Dimitiev, and Jovanovski "repeatedly and regularly used the U.S. Mail and interstate wire transmissions," Doc. 1 ¶ 64, do not meet the strict pleading requirements of Rule 9(b). *See Jepson, Inc. v. Makita Corp.*, 34 F.3d 1321, 1328 (7th Cir. 1994) ("[L]oose references to mailings and telephone calls in furtherance of a purported scheme to defraud will not do. Instead, the plaintiff must, within reason, describe the time, place, and content of the mail and wire communications, and it must identify the parties to these communications." (citations omitted) (internal quotation marks omitted)); *see also Slaney v. Int'l Amateur Athletic Fed'n*, 244 F.3d 580, 599 (7th Cir. 2001) (to allege wire fraud as a RICO

predicate "plaintiff must allege the identity of the person who made the representation, the time, place and content of the misrepresentation, and the method by which the misrepresentation was communicated to the plaintiff"). But Plaintiffs contend that they have pleaded more by attaching some of the communications, which include dated invoices containing the allegedly false representations about the load values. While this goes some of the way to meeting their Rule 9(b) obligations, it does not fully satisfy them, because Plaintiffs have still failed to describe how they received each of the invoices or provide any basis to suggest that the false statements were made not only to Gomi Mak but also to the individual Plaintiffs.

Apparently recognizing the potential pleading defects, Plaintiffs do contend that they need additional discovery to further uncover the details of the fraud. Allegations made on information and belief cannot satisfy Rule 9(b)'s particularity requirement unless a plaintiff shows that "(1) the facts constituting the fraud are not accessible to the plaintiff and (2) the plaintiff provides 'the grounds for his suspicions.'" *Pirelli*, 631 F.3d at 443 (citation omitted)). Here, Plaintiffs allege that Andreevski, Dimitiev, and Jovanovski made or directed others to make the misrepresentations to them, meaning that "Plaintiffs should know what [Andreevski, Dimitiev, and Jovanovski, or their agents] said, to whom, and when." *In re Boeing 737 MAX Pilots Litig.*, 638 F. Supp. 3d 838, 872 (N.D. Ill. 2022). Therefore, they cannot rely on the need for additional discovery to loosen Rule 9(b)'s requirements.

Because Plaintiffs have not sufficiently alleged at least two predicate acts of mail or wire fraud with the particularity required by Rule 9(b), their RICO claim fails. *See R.E. Davis Chem. Corp. v. Nalco Chem. Co.*, 757 F. Supp. 1499, 1516–17 (N.D. Ill. Nov. 13, 1990) ("[B]ecause the validity of plaintiff's RICO claim rests in part upon whether or not a pattern of racketeering activity has been alleged, the failure to describe in sufficient detail the predicate offenses of mail

fraud, wire fraud, and, the interstate transportation of stolen property leaves the RICO claim without an adequate foundation."). Although the Court does not address Defendants' remaining arguments for dismissal of the RICO claim, to the extent that Plaintiffs choose to replead this claim, they should carefully consider those arguments and address any other potential pleading deficiencies in an amended complaint. In considering whether to amend, Plaintiffs should also keep in mind that not every fraudulent scheme gives rise to a RICO claim. *See Jennings v. Auto Meter Prods., Inc.*, 495 F.3d 466, 472 (7th Cir. 2007) ("[RICO] was never intended to allow plaintiffs to turn garden-variety state law fraud claims into federal RICO actions."); *Wankel v. S. Ill. Bancorp, Inc.*, No. 06-cv-0619, 2007 WL 2410328, at *10 (N.D. Ill. Aug. 21, 2007) (dismissing RICO claims that alleged a fraudulent loan scheme and noting that "it seems that Plaintiffs' cause of action constitutes precisely what the Supreme Court and Seventh Circuit courts hope to forestall: 'RICO's use against isolated or sporadic criminal activity [such that] RICO [becomes] a surrogate for garden-variety fraud actions properly brought under state law'" (alterations in original) (citation omitted)).

## II. Breach of Contract

Because the Court dismisses the only federal claim before it, and diversity jurisdiction does not exist in this case, the Court declines to exercise supplemental jurisdiction over Plaintiffs' state law breach of contract claim at this time. *See* 28 U.S.C. § 1367(c); *Groce v. Eli Lilly & Co.*, 193 F.3d 496, 501 (7th Cir. 1999) ("[I]t is the well-established law of this circuit that the usual practice is to dismiss without prejudice state supplemental claims whenever all federal claims have been dismissed prior to trial."). The Court defers consideration of

Defendants' arguments for dismissal of the breach of contract claim until Plaintiffs have adequately alleged a basis for the Court's subject matter jurisdiction.[3]

## CONCLUSION

For the foregoing reasons, the Court grants Defendants' motion to dismiss [22]. The Court dismisses Plaintiffs' complaint without prejudice.

Dated: July 18, 2025

SARA L. ELLIS
United States District Judge

---

[3] Although the Court does not address Defendants' arguments for dismissal of the breach of contract claim against Straight Leasing at this time, the Court encourages Plaintiffs to address any potential pleading deficiencies raised by Defendants in an amended complaint. Specifically, to the extent that Plaintiffs seek to proceed against Straight Leasing for breach of the Leases, they should include specific allegations in the amended complaint addressing which Leases they claim Straight Leasing breached, Plaintiffs' compliance with the Leases, and how Straight Leasing breached the Leases.